IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **D.A. NOLT, INC.,** | : | |
| *Plaintiff* | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **THE PHILADELPHIA MUNICIPAL** | : | **No. 18-4997** |
| **AUTHORITY,** *et al.*, | : | |
| *Defendants* | : | |

## MEMORANDUM

PRATTER, J.                                                                                                    MAY 28, 2020

The parties dispute whether the liquidated damages provision included in a construction contract was itself constructed on a base of reasonable forecast of actual damages. The City of Philadelphia and the Philadelphia Municipal Authority seek to enforce a $10,000 per diem liquidated damages provision based only on their project director's recollections of pre-estimates of probable actual damages that had been used to set provisions in other construction contracts negotiated and written decades ago. General contractor D.A. Nolt, Inc. moves for partial summary judgment and seeks to dismiss the defendants' claim for liquidated damages. For the reasons discussed below, the Court grants Nolt's motion.

### BACKGROUND

The City, through the Philadelphia Municipal Authority,[1] sought to relocate the Philadelphia Police Department's headquarters to 4601 Market Street. The relocation required a renovation project that was scheduled to be completed in three construction phases. The City contracted Nolt, a general contractor, to complete $13,473,817.02 worth of work on the building

---

[1] The City assigned its rights under the contract at issue to the Philadelphia Municipal Authority but remained involved in the daily operations of the project as the municipal authority's representative and agent. For ease of reference, this Memorandum refers to the defendants collectively as "the City."

1

façade and roof improvements during the project's second phase. However, the project fell through when Mayor James Kenney announced that the police headquarters would be relocated elsewhere. According to Nolt, the City failed to pay Nolt for some of the work it completed prior to the cessation of the project,[2] allegedly resulting in damages in excess of $2,564,329.37.[3] Accordingly, Nolt brought this suit against the City. The City, in turn, raised a counterclaim asserting that Nolt breached the contract by allegedly delaying the project for 255 days. Although the City primarily argues that it incurred nearly $2.7 million in actual damages due to Nolt's alleged breach, it alternatively asserts that Nolt owes the City $2.55 million pursuant to a $10,000 per diem liquidated damages provision in the contract. Nolt's motion takes aim at the City's effort to enforce the liquidated damages provision.

### A. Liquidated Damages Provision

The project manual consists of the City's Standard Contract Requirements for Public Works Contracts and the City's Special Contract Requirements. In pertinent part, the City's Standard Contract Requirements state:

> If, for reasons other than those stated above, any portion of the work remains uncompleted after the Contract date specified for its completion, notwithstanding Substantial Completion of the work, the Project Manager shall deduct from payments due the Contractor, as liquidated damages an amount per diem, according to the following schedule:

---

[2] Nolt's work included miscellaneous asbestos abatement, masonry façade restoration, structural steel, window replacement, and roof removal and replacement.

[3] Nolt also alleges that it was forced to remain on the project for longer than necessary due to various delays caused by the City (namely, the City making changes to the project and failing to timely review documents). According to Nolt, it completed work at an accelerated pace and an increased rate because the City denied Nolt's extension requests for additional time to complete the work. The City counters that Nolt's own doing delayed the project, not the modifications the City made to the project.

| Contract Value | Agreed Delay Damages Per Diem |
|---|---|
| $0-$100,000 | $250 |
| $100,001-$500,000 | $500 |
| $500,001-$1,000,000 | $750 |
| Over $1,000,000 | $1,000 |

These per diem delay damages are assessed as agreed liquidated damages because the Parties have considered the difficulty of determining the City's actual damages and agreed that computation of the City's actual damages is impossible . . . .

Pl.'s Ex. 3 at § 26(f) (Doc. No. 24-6).

The Special Contract Requirements modified the standard schedule as follows:

| Contract Value | Agreed Delay Damages Per Diem |
|---|---|
| $0-$100,000 | $250 |
| $100,001-$500,000 | $500 |
| $500,001-$1,000,000 | $1,000 |
| Over $1,000,000 | *$10,000* |

*Id.* at 12.F (emphasis added). Thus, the modification increased the per diem damages for contract values greater than $1,000,000 from $1,000 to $10,000. Because Nolt's contract value exceeded $1,000,000, the $10,000 per diem liquidated damages provision applies here.

### B. Pedro Pinto's Deposition Testimony

Nolt's arguments initially focused on the deposition testimony of Pedro Pinto, a professional civil engineer employed as a project manager and Philadelphia Municipal Authority representative. Mr. Pinto testified that although he was part of the process to increase the per diem amount from $1,000 to $10,000, he did not perform any analysis to forecast the daily amount of liquidated damages for the project, and he was unaware of anyone else who performed such an analysis.

### C. James Lowe's Declaration and Deposition Testimony

In defending against Nolt's motion, the City relies on the declaration of James Lowe, the Project Director for the City of Philadelphia's Department of Public Property. In his declaration,

3

Mr. Lowe stated that he finalized and executed the City's contract with Nolt, including the $10,000 per diem liquidated damages provision. According to Mr. Lowe, the City determined that the $10,000 per diem provision "was accurate based on an analysis of projects of similar scope and magnitude." Lowe Decl. at ¶ 6 (Doc. No. 28-2). The liquidated damages provisions for these prior projects were based on calculations which had estimated daily costs to the City in the event of any delays in those projects. In his declaration, Mr. Lowe also states that the City determined that it would be difficult to determine actual damages for breaching the contract at the time the parties entered into the Nolt contract, and that the City intended the $10,000 liquidated damages amount to cover any damages it may incur if Nolt breached the contract.

After the City submitted Mr. Lowe's declaration to the Court, Nolt deposed Mr. Lowe. When questioned about his declaration, Mr. Lowe testified that he "believe[d]" that his department, "back in the [1990s]," considered "some relative costs that [it] might incur" regarding prior large-scale projects "that had some detention component[s]." Lowe Dep. at 226:18-24; 227:13-14 (Doc. No. 40-1). Specifically, the earlier projects Mr. Lowe referenced included the Curran Fromhold Correctional Facility, the Riverside Women's Correctional Facility, and the Philadelphia Youth Center. Mr. Lowe testified that these projects each cost more than $70 and $100 million. Mr. Lowe believes that the analyses for at least two of these projects could have factored in probable rental costs for housing inmates at other locations. Because these past contracts were entered into and performed before he began working for the City, Mr. Lowe had not personally requested or analyzed the calculations that had been completed to prepare the liquidated damages provision included in those contracts. Mr. Lowe stated that he could not locate any documentation detailing the earlier analyses conducted to formulate the liquidated damages provisions included in the past contracts.

## LEGAL STANDARD

A court can grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might well affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 6 of the Federal Rules of Civil Procedure, the Court must view the evidence presented in the motion in the light most favorable to the non-moving party and draw all evidence in that party's favor. *Id.* However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Where the non-moving party bears the burden of proof on a particular issue, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the moving party has met its initial burden, the non-moving party then must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine

dispute." FED. R. CIV. P. 56(c).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

"In Pennsylvania, liquidated damages are defined as 'the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable . . . if the breach occurs.'" *Benson v. Budget Rent A Car Sys., Inc.*, No. 08-4512, 2011 WL 4528334, at *5 (E.D. Pa. Sept. 29, 2011) (citations omitted).  "[C]ontracting parties may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs." *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002) (citations omitted); *see also Wayne Knorr, Inc. v. Dep't of Transp.*, 973 A.2d 1061, 1091 (Pa. Commw. Ct. 2009) ("Liquidated damages as set forth within a contract compensate a party for difficult-to-prove losses, and serve a particularly useful function when damages as uncertain in nature or amount or are unmeasurable, as is the case in many government contracts.") (citing *Calabro v. Dep't of Aging*, 689 A.2d 347, 350-51 (Pa. Commw. Ct. 1997)).

"'To be enforceable, liquidated damages must be a reasonable forecast to the possible harm to the non-breaching party'" rather than an unlawful penalty. *Ferraro v. M&M Ins. Grp., Inc.*, No. 1133 WDA 2016, 2017 WL 6330904 (Pa. Super. Ct. Dec. 12, 2017) (quoting *Palmieri v. Partridge*, 853 A.2d 1076, 1080 (Pa. Super. Ct. 2004)); *see also Wayne Knorr*, 973 A.2d at 1091 ("[Liquidated damages] clauses are enforceable provided, at the time the parties enter into the

6

contract, the sum agreed to is a reasonable approximation of the expected loss rather than an unlawful penalty.") (citations omitted); *A.G. Cullen Const., Inc. v. State Sys. of Higher Educ.*, 898 A.2d 1145 (Pa. Commw. Ct. 2006), *overruled on other grounds by A. Scott Enter., Inc. City of Allentown*, 142 A.3d 779 (Pa. 2016) (same*); Calabro v. Dep't of Aging*, 689 A.2d 347, 351 (Pa. Commw Ct. 1997) ("Clauses setting forth liquidated damages are enforced where they are reasonable, and fair attempts to fix just compensation for anticipated loss caused by breach of contracts.").[4] Courts have declined to enforce liquidated damages provisions unsupported by any "indication in the record" that the figure at issue "was an accurate pre-estimate of actual damages caused by the breach." *Hanrahan v. Audubon Builders, Inc.*, 614 A.2d 748, 751-52 (Pa. 1992); *see also In re Milbourne*, 557 B.R. 376, 392 (Bankr. E.D. Pa. 2016) (finding late charges to be unenforceable penalties after a condominium association "failed to provide any evidence that [it] represent[ed] a good faith estimate of the administrative expense that it would incur if an owner was delinquent").

A penalty, in contrast to permissible liquidated damages, "is fixed, 'not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach.'" *Pantuso Motors*, 798 A.2d at 1282 (quotation omitted). "[T]he question whether a sum stipulated for in a written contract is a penalty or liquidated damages is a question for the court, to

---

[4] The parties greatly dispute what should be required in order to demonstrate the reasonableness of the City's forecast of probable loss. Of course, Nolt argues that that the burden is demanding, whereas the City argues that it is a modest standard. In particular, Nolt requests the Court to apply a clear and convincing standard of proof without citing to any judicial decision applying this standard when assessing the enforceability of a contractual liquidated damages provision. Likewise, Nolt does not offer a persuasive policy reason for such a high standard. Therefore, the Court rejects Nolt's proposition. On the other hand, the City relies on clearly unhelpful or off-point case law to support its position. For instance, the City cites *Ferraro v. M & M Ins. Grp. Inc.*, No. 1133 WDA 2016, 2017 WL 6330904 (Pa. Super. Ct. Dec. 12, 2017), despite the fact that the parties in that case "*agreed* to the formula set forth in the liquidated damages clause as a reasonable estimate of actual damages that would be caused by the breach alleged herein." *Id.* at 3 (emphasis added).

be determined by the intention of the parties, examined in the light of its subject-matter and its surroundings." *Meyer-Chatfield v. Century Business Serv., Inc.*, 732 F. Supp. 2d 514, 523 (E.D. Pa. 2010) (quoting *Laughlin v. Baltalden, Inc.*, 159 A.2d 26, 29 (1960)).

Here, Nolt argues that the $10,000 per diem liquidated damages is unenforceable as a matter of law. Nolt does not dispute that actual damages were difficult to ascertain. Nor does Nolt point to any evidence of the "smoking gun" variety to suggest that the City clearly intended the provision to act as a penalty which would make it unenforceable.[5] Rather, Nolt contends that the liquidated damages provision is unenforceable because it was not based on a reasonable forecast of the City's possible harm in the event delay occurred. Accordingly, the Court analyzes the reasonableness of the steps the City took to estimate its probable actual damages.

Nolt's motion for summary judgment initially argued that, as demonstrated by Mr. Pinto's deposition testimony, the City failed to base its liquidated damages provision on any good faith estimate of actual damages. In response, the City exclusively pointed to the declaration of Mr. Lowe to demonstrate that Mr. Lowe, not Mr. Pinto, conducted a reasonable analysis to pre-estimate probable actual damages. Having deposed Mr. Lowe, Nolt argues that Mr. Lowe's deposition testimony makes clear that the actions he took in order to set the liquidated damages provision failed to reasonably approximate likely actual damages. According to Nolt, the City's failure to

---

[5] The Court mentions one caveat to this statement. During oral argument, the City's attorney first stated that the liquidated damages provision at issue was intended to make the City whole if a delay occurred. Immediately after that explanation, she then stated that the liquidated damages provision was intended to ensure that the City could start the third phase of the project on time. Nolt's attorney argued that if the provision was intended to ensure timely compliance, it should then be considered an unenforceable penalty. The City's attorney requested that her inartful articulation not be misconstrued to suggest that the City's position is that the liquidated damages provision is a penalty. Indeed, the City cited evidence that it intended the per diem provision to act as a mechanism for receiving proper compensation in the event of a breach. Lowe Dep. at 245:22-246:5 (Doc. Nos. 40-1, 43-1). Nolt fails to cite any evidence supporting the legitimacy of the misstatement. Therefore, the Court instead focuses its analysis on Nolt's argument that the City failed to reasonably pre-estimate damages.

reasonably forecast estimated actual damages renders the liquidated damages unenforceable.

As a preliminary matter, the Court addresses a point of contention made apparent at oral argument concerning whether any material facts are in dispute. The most up-to-date version of Nolt's argument is that the *undisputed* facts demonstrate that Mr. Lowe's pre-contract forecast did not in good faith estimate the City's probable damages. During oral argument and in its briefing, the City initially argued that a material factual dispute remains as to the interpretation of the reasonableness of the City's actions. With both parties in agreement as to the historical facts at issue, however, it is unclear what the City contends is left for the fact-finder to resolve. Nolt does not challenge Mr. Lowe's credibility. Rather, it argues that even if the Court accepts Mr. Lowe's statements, Mr. Lowe did not do enough to reasonably pre-estimate probable actual damages. To the extent the City argues that more evidence may exist to bolster its position that Mr. Lowe's analysis was sufficient, it is unclear how additional evidence of the same ilk (1) would raise a genuine dispute of material fact or (2) if the hypothetical evidence was so integral to its position, why the City did not produce or at least specify this additional evidence for purposes of disputing Nolt's summary judgment motion. Accordingly, the City alternatively argued at oral argument that even if the Court assumes that the summary judgment record is closed,[6] the existing evidence shows that Mr. Lowe's determination to include a $10,000 per diem provision was reasonable.

Because, then, there are no discernable disputes of material historical fact and because enforceability of a liquidated damages clause is a question of law, the Court is prepared to assess whether the actions Mr. Lowe took to determine the liquidated damages provision render the $10,000 per diem provision enforceable.

According to Mr. Lowe, he did not actually attempt to calculate "in a number format" the

---

6  Indeed, the summary judgment record *is* closed.

9

estimated daily costs to the City in the event of a delay. Lowe Dep. at 264:5-8 (Doc. No. 40-1). Instead, Mr. Lowe determined that the $10,000 per diem provision was "accurate based on an analysis of [construction] projects of similar scope and magnitude" that the City completed in the 1990s. Lowe Decl. at ¶ 6 (Doc. No. 28-2). Nolt contends that the City could not reasonably rely on these prior City construction projects to estimate its damages approximation here because (1) Mr. Lowe himself lacks "first-hand or clear knowledge" of the nature of the previous analyses conducted to estimate the liquidated damages provisions included in the 1990s contracts, Def.'s Reply at 3 (Doc. No. 42); (2) Mr. Lowe presumes that the analyses conducted for the prior projects considered fundamental costs that are not at issue in this particular project; and (3) the past projects were much more expensive than Nolt's $13 million portion of the project at issue here.

The Court first considers Mr. Lowe's knowledge of the analyses conducted to determine proper liquidated damages provisions to be included in the contracts for the projects completed in the 1990s. Despite fully relying on the prior projects' analyses, Mr. Lowe was not actually employed by the City when they were performed. Thus, he was not at all involved in conducting the earlier analyses. Moreover, Mr. Lowe's testimony makes it clear that he does not even have any documents detailing the pre-contract estimations that were allegedly considered. Mr. Lowe testified that he could not locate any documents related to these prior analyses. Lowe Dep. at 262:9-15 (Doc. No. 40-1). Concerning the Riverside Women's Detention Facility, Mr. Lowe testified that he could not "recall seeing" any analysis of the daily costs the City would incur if there was a delayed completion of that project. *Id.* at 234:6-13; 235:23-236:3; 236:11-14. He also testified that he only saw the documents detailing the estimates regarding the Curran Fromhold Correctional Facility project when he joined the City "almost 20 years ago." *Id.* at 230:20-24; 230:18-20.[7]

---

[7] Mr. Lowe testified that he believes he did see a pre-bid analysis for the Philadelphia Youth Center. Lowe Dep. at 236:17-20 (Doc. No. 40-1). He does not provide any details about when he saw this analysis

10

Second, the Court considers the differences in the estimated costs at issue in the various contracts. Mr. Lowe testified that the Curran Fromhold Correctional Facility liquidated damages calculations could have factored in the costs of "sending inmates to another facility" while construction was being completed. *Id.* at 231:12-23. Moreover, the Youth Center estimates factored in the cost of rent for a temporary facility for housing the juveniles. *Id.* at 234:18-235:17. According to Mr. Lowe, however, there was no need to factor in potential rent payments for housing inmates for the project at issue here. *Id.* at 265:2-7.

Third, the Court considers Nolt's argument that it was unreasonable for the City to look to prior projects that were "70, 100, plus million dollar type of projects," *id.* at 227:22-228:1, in order to assess the liquidated damages provision for a contractual project worth so much less at under $14 million. Although Nolt's contract was indeed for $13,473,817.02, Ex. D, Def.'s Reply (Doc. No. 40-4), the third phase of the full project was anticipated to cost between $150 to $170 million, Lowe Dep. at 18:9-12 (Doc. No. 40-1). According to Mr. Lowe's testimony, however, the liquidated damages provision at issue took into consideration the fact that a delay or breach in the performance of a Phase II contract could potentially impact most of the Phase III contractors. Lowe Dep. at 244:4-245:24 (Doc. No. 40-1). In any case, these issues and difference serve to cause the Court to doubt that it would be appropriate to allow the City to import the liquidated damages provision from those other, earlier projects.

Taking these undisputed facts into consideration, the Court finds that that the City's liquidated damages provision was not based on a reasonable forecast of probable costs. It was unreasonable for the City to forego even attempting to estimate the probable costs at issue in this particular project and instead rely on undocumented, amorphous recollections or casual

---

and, even so, he still cannot locate any documentation of the analysis for that project, even assuming it is a suitably similar project.

re-constructions by persons without first-hand knowledge of prior analyses which took into consideration estimations of entirely different probable costs. Therefore, the Court concludes that the $10,000 liquidated damages provision the City hopes to enforce here is unreasonable.

Finally, the City argues that the Court should find the $10,000 per diem provision reasonable because the alleged actual damages award, $2.7 million, is comparable to the liquidated damages award, $2.55 million. The City cites *Holt's Cigar Co. v. 222 Liberty Assoc.*, 591 A.2d 743 (Pa. Super. Ct. 1991), to support its position that the Court should base the reasonableness determination, at least in part, on the actual amount of damages allegedly suffered. *Id.* at 748 (noting that one avenue of inquiry to discern the parties' intentions is to "consider the actual amount of damages suffered due to delayed construction relative to the stipulated sum, and hence, whether the stipulation was so grossly disproportionate to actual damages as to afford [the party seeking liquidated damages] a windfall"). Nolt contends that retroactively basing a reasonableness determination on the actual damages improperly takes the focus away from the reasonableness of the approximation of expected loss at the time in which the parties entered into the contract. *See Wayne Knorr*, 973 A.2d at 1091.

The Court acknowledges that courts may determine that a liquidated damages provision providing for a particularly disproportionate liquidated damages award is an unenforceable penalty. *See Holt's Cigars Co.*, 591 A.2d at 748; *see also Finkle v. Gulf & W. Mfg. Co.*, 744 F.2d 1015, 1021 (3d Cir. 1984) ("If the amount of damages assessed is subsequently adjudged unreasonable in light of either anticipated or actual or actual harm, the contractual provision will be voided as a penalty."). However, that does not mean that the inverse is true. A liquidated damages award not based on any reasonable pre-estimate of actual damages is not retroactively rendered reasonable simply because, by apparent happenstance, the actual damages accrued are

roughly equal to the liquidated damages award. Here, the City's good or lucky guess cannot overcome its failure to reasonably forecast probable actual damages incurred as a result of a delay.

In sum, because the $10,000 per diem provision was not based on a reasonable forecast of estimated actual damages, the Court determines that the liquidated damages provision is unenforceable. The City, of course, may still attempt to recover actual damages resulting from the alleged breach. *Robins Motor Trans., Inc. v. Associated Rigging & Hauling Corp.*, 944 F. Supp. 409, 412 (E.D. Pa. 1996) (citations omitted).

## CONCLUSION

For the foregoing reasons, the Court grants Nolt's motion for summary judgment and dismisses the City's claim for liquidated damages. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE